HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIGITAL MENTOR, INC.,

       Plaintiff,

   v.

OVIVO USA, LLC; OVIVO US HOLDING INC.; VALERE MORISSETTE; MARC BARBEAU; DOES 1-20,

       Defendants.

Case No. C17-1935-RAJ

ORDER

This matter comes before the Court on Plaintiff Digital Mentor, Inc.'s ("Digital") Motion for Preliminary Injunction. Dkt. # 38. Defendants oppose the Motion. Dkt. # 45. For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

**I.    BACKGROUND**

Digital is an engineering consulting service that developed a mobile computing system, DigitalMentor, for the waste and wastewater industry to allow companies to monitor and maintain their equipment on mobile devices. Dkt. # 1 ¶ 1. Defendant Ovivo USA, LLC provides equipment for water and wastewater treatment facilities throughout the United States and around the world[1]. *Id*. ¶ 2. In March of 2014, Digital marketed

---

[1] Defendant Ovivo US Holding Inc. is a Delaware corporation that owns Ovivo USA, LLC. Defendant Ovivo, Inc., is a Canadian corporation that owns Ovivo US Holding Inc.

ORDER – 1

DigitalMentor to Ovivo for use in their facilities and in conjunction with the sale of their equipment. The parties then entered into a licensing agreement ("Master Agreement"). Pursuant to that licensing agreement, Digital agreed to create and license DigitalMentor for Ovivo's facilities and customers under the name "DigitalOPS" and Ovivo granted Digital a non-exclusive limited license to Ovivo's Standard Operating Procedures ("SOP"), manuals, technical drawings, etc. Dkt. # 11-1 at 10; Dkt. # 23 at 5. On or about November 1, 2014, Digital and Ovivo entered into a Non-Disclosure Agreement ("NDA"). Dkt. # 1 ¶ 127.

On December 29, 2017, Digital filed a Complaint against Ovivo seeking injunctive relief, alleging that Ovivo violated the Defend Trade Secrets Act, 18 U.S.C. 1836, *et seq*. ("DTSA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et seq.*, and committed trademark and copyright infringement. Digital also brings a breach of contract claim and several other state law claims. Dkt. # 1. On January 24, 2018, the Court granted Digital's Motion for Temporary Restraining Order. Dkt. # 35. On February 12, 2018, the Court held a hearing on whether the temporary restraining order ("TRO") should be converted into a preliminary injunction.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, Digital must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "A preliminary injunction is appropriate when a plaintiff demonstrates that

---

Dkt. # 1 ¶ 3. Defendant Valere Morissette is Vice President of Ovivo USA, LLC. *Id*. ¶ 6. Defendant Marc Barbeau is President of Ovivo USA, LLC, and President and CEO of Ovivo, Inc. *Id*. ¶ 7. For the purposes of this Motion, the Court will refer to all of the Defendants collectively as "Ovivo".

ORDER – 2

serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). This is only appropriate as long as the plaintiff also shows there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.*

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

##### 1. *Defend Trade Secrets Act Claim*

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A trade secret is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3)(A)(B). "Misappropriation" includes both acquisition and disclosure of trade secrets. 18 U.S.C. §§ 1839(5)(A) & (B). Digital argues that DigitalMentor was "the first mobile digital software system that provided intuitive, interactive and comprehensive access to maintenance, troubleshooting and support information relating to equipment and assets within a water and wastewater treatment facility or plant." However, Digital fails to identify what "innovative features" of DigitalMentor it considers to be a trade secret. Other than Digital's contention that DigitalMentor is the

ORDER – 3

"first of its kind in the water and wastewater treatment industry" and that it entered into an NDA in order to keep its "confidential, proprietary, and valuable information" secret, Digital provides no further convincing argument or explanation as to how that information meets the definition of a trade secret under 18 U.S.C. § 1839.

"A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). To the extent that Digital argues that DigitalMentor's "processes, technology, and system" are a trade secret, it fails to identify what processes, what technology, and what system it is seeking to protect. Digital argues repeatedly that its product is innovative in how it interacts with users/operators, stating that DigitalMentor's intellectual property is comprised of "a complex algorithm and process which collects information and inputs from many different devices and collection methods and like a brain, processes and sifts through them, and produces on the other side, an action to perform a task based on the input and steps on how to perform the task supported by very clear, multimedia support information." Dkt. # 58 at 4. Digital fails to identify what this algorithm is, and what about DigitalMentor's interaction with users is a trade secret.

Simply stating that an algorithm exists and indicating that it collects information, produces an action, and indicates how to perform that action is not enough information to determine whether Ovivo has misappropriated that algorithm[2]. *See MAI Sys. Corp.*, 991 F.2d at 522 (9th Cir. 1993) ("Since the trade secrets are not specifically identified, [the Court] cannot determine whether Peak has misappropriated any trade secrets by running the MAI operating software and/or diagnostic software in maintaining MAI systems for its customers."). The Court does not opine on whether DigitalMentor's processes,

---

[2] Digital's brief comparison of DigitalMentor and the GPS navigation application WAZE is not persuasive. While Digital appears to be comparing the algorithms and processes in both products, simply stating that they are similar and that WAZE is innovative does not automatically indicate that DigitalMentor also contains a similarly "innovative" algorithm and process without further details or information.

ORDER – 4

technology, system, or interaction with users are actually trade secrets, only that Digital fails to identify exactly what those trade secrets are and fails to carry its burden to show they exist. Therefore, Digital fails to show a likelihood of success on the merits and fails to raise "serious questions" going to the merits of its DTSA claim.

  *2. Copyright Infringement Claim*

"[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); 17 U.S.C. § 501(a). In order to bring a copyright infringement claim, there must be registration of a copyright. 15 U.S.C. § 411(a). "[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010). Digital submits a declaration and a list of applications filed by Digital with the U.S. Copyright Office in support of their contention that they filed copyright applications related to DigitalMentor's "processes, technology, platform, and system." Dkt. # 40.

Digital alleges that that Ovivo infringed on its copyrights because Ovivo "copied DigitalMentor's software program, prepared a derivative work based on DigitalMentor, and distributed copies to the public." Dkt. # 38-1 at 21. Digital contends that these alleged actions infringed its exclusive rights as copyright owners to the DigitalMentor software system. "Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). "Where a high degree of access is shown, we require a lower standard of proof of substantial similarity." *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).

"In determining whether two works are substantially similar, [the Ninth Circuit] employ[s] a two-part analysis: an objective extrinsic test and a subjective intrinsic test."

ORDER – 5

*Swirsky*, 376 F.3d at 845 (9th Cir. 2004). The extrinsic test "considers whether two works share a similarity of ideas and expression based on external, objective criteria." *Smith*, 84 F.3d at 1218. If the plaintiff satisfies the extrinsic test, then the intrinsic test asks whether an "ordinary, reasonable observer" would find a substantial similarity of expression of the shared idea. *Id.*

The parties do not dispute that Ovivo had access to Digital's product. However, Digital fails to show that Ovivo's product is "substantially similar" to DigitalMentor in execution. First, as with Digital's DTSA claim, it is unclear what aspects of DigitalMentor's software program Digital alleges are protected. Digital does not submit its copyright applications or any further details as to what these applications are attempting to protect by copyright. Dkt. # 40. The provided list of applications does not have sufficient information to make this determination. Second, Digital fails to show that the two products are substantially similar under either the extrinsic or intrinsic tests.

While Digital alleges that WaterExpert is "virtually identical in appearance, design, and functionality to DigitalMentor," a demonstration and explanation of WaterExpert indicates otherwise. Dkt. # 58; Hearing Transcript at 22-28. For example, Digital states several times that DigitalMentor was meant to be used without a web connection, while Ovivo represents that WaterExpert is a cloud-based mobile application. *See* Dkt. # 60; Dkt. # 45. Ovivo contends that DigitalMentor is an "aggregator of third-party iPad apps run from a PDF with hyperlinks." Dkt. # 46 ¶ 66. While Digital disputes this description of DigitalMentor, it does not provide any convincing argument that its product is not a PDF-based product that relies on third-party applications, instead relying on its arguments regarding its algorithm to support its contention that Ovivo copied Digital's copyrights and that the products are "almost identical" to the user. Dkt. # 60.

As noted above, Digital does not explain what this algorithm is, only describing what it does in general terms. Digital repeatedly refers to the algorithm's ability to "winnow down" information and "formulate a predictive action" or "come up with the

ORDER – 6

next step." Dkt. # 60 at 10 ("This algorithm considers data in context of location and state of the equipment . . . . DigitalMentor takes . . . data and files, integrates it with our algorithm for database location and retrieval, and creates a platform . . ."); *see also* Hearing Transcript at 49 (". . . [Ovivo] referred to DigitalMentor as distilling down. That's the winnowing down process . . . that ability to take a piece of equipment, take it down to its basic elements, to formulate a predictive action based on the winnowing down. . . . That's a process, that's an algorithm that Ovivo wanted. . . ."); Hearing Transcript at 12. Ovivo does not dispute that Digital created instructive content for users based on information collected from wastewater treatment operators and plants. Hearing Transcript at 17 ("[Digital] had the ability to take information based on interviews of the operators and . . . go onto the site, get the information . . . and they would distill it down into instructions . . . how-to videos . . . "). However, Ovivo disputes that WaterExpert copied this content or that the content is included in the product. To the extent that Digital is arguing that this algorithm creates the content that is loaded onto DigitalMentor, Ovivo contends that any DigitalMentor-created content is not present in WaterExpert. Hearing Transcript at 41. To the extent that Digital is arguing that the algorithm is the connector between the initial input of information and instructions for the user as to the next step, Digital fails to show that Ovivo copied this specific connector when it created WaterExpert, or that the operation of DigitalMentor as a result of this connector is substantially similar to the operation of WaterExpert.

Digital contends that DigitalMentor is similar to WaterExpert in that it is a database-structured platform that syncs with a cloud server and that its functionality is the same as WaterExpert. Dkt. # 60. However, Digital's description of both products is deceptively simplistic. After review of the evidence and argument submitted by both parties, it appears that Digital creates a PDF-based platform, or the DigitalMentor product, based on user-specific data available at creation. This platform connects to the cloud server "only for platform updates." *Id.* In contrast, WaterExpert is a mobile

ORDER – 7

application that can be downloaded to any mobile device. Instead of syncing occasionally for platform updates, WaterExpert pulls information directly from a cloud server. Hearing Transcript at 22-28. WaterExpert has "live connectivity between Ovivo and the customer's live access to its own plant data," data monitoring, and provides trendlines for different equipment. Dkt. # 46. Customers can also manage multiple users, send alerts by email and text message, maintain service logs, and create recurring maintenance tests. Digital does not dispute that these differences between the products exist, only that "Ovivo would not have gotten to where it is without DigitalMentor's technology." Dkt. # 60 at 9. Digital fails to show that DigitalMentor is substantially similar to WaterExpert based on external, objective criteria.

Even if Digital satisfied the extrinsic test for substantial similarity, Digital fails to show that an "ordinary, reasonable observer" would find a substantial similarity of expression of the shared idea. Despite its contentions that that WaterExpert is "virtually identical in appearance, design, and functionality to DigitalMentor," and that "[t]o the end user our products are almost identical," the products are not identical in design or appearance, and are not substantially similar in functionality. Both products were built for use in the water and wastewater treatment industry and both provide the user with access to data relevant to the industry and its equipment, i.e. equipment manuals, standard operating procedures, and instructive videos. However, these shared traits alone are not sufficient to show that these products are "virtually identical" to the end user. Similarity of idea alone does not establish that two works are "substantially similar", the works must also be similar in execution. Review of the submitted evidence and the parties' arguments show that these products are not substantially similar based on either objective or subjective criteria. Therefore, Digital fails to show a likelihood of success of its copyright infringement claim.

### 3. *Breach of Contract Claim*

This Court granted Digital's motion for temporary restraining order on the basis of

ORDER – 8

its likelihood of success of its breach of contract claim. Dkt. # 35. Based on the information available on the record at the time, Ovivo's argument that they did not breach the NDA because any information used by them was not confidential or was their intellectual property to use, was not convincing. However, after review of the parties' submissions, the balance of the record, and the arguments presented at the preliminary injunction hearing, the Court finds that Digital now fails to show a likelihood of success of its breach of contract claim.

The NDA between the parties states that information that Digital revealed to Ovivo regarding DigitalMentor is confidential and that Ovivo is not to "disclose, reproduce, summarize and/or distribute" that information, and is not to "reverse engineer, decompile, or disassemble any software disclosed by [Digital] under the terms of [the NDA]." Dkt. # 11 Ex. A. The parties also entered into a Master Agreement in addition to the NDA. Pursuant to the Master Agreement, Ovivo agreed not to distribute or sell Digital's "products" or "modules", or to "modify, adjust or amend any Module or any Digital Mentor product." Dkt. # 24 Ex. A.

Digital argues that Ovivo breached both the NDA and the Master Agreement by re-designing the structure and layout of DigitalMentor and working to improve graphics and the functionality and flow of the product. Dkt. # 58. However, this "re-design" refers to the changes Ovivo made to DigitalOPS while the parties were developing that product pursuant to their licensing agreement. *Id.* This specific alleged breach is not relevant to Digital's request for preliminary injunction of WaterExpert and is not appropriately a basis for granting it. Digital's claim that Ovivo marketed this version of DigitalOPS in violation of these contracts is a similarly inappropriate basis for granting an injunction of WaterExpert. DigitalOPS was the version of DigitalMentor that Digital and Ovivo created for Ovivo. While Digital may disagree whether DigitalOPS/DigitalMentor are different than WaterExpert, Digital does not contend that its allegations regarding this specific "re-design", or the alleged marketing of that "re-

ORDER – 9

design" are in reference to WaterExpert.

Digital also contends that Ovivo used its access to DigitalMentor pursuant to the Master Agreement to reverse engineer and steal Digital's technology in violation of the NDA. Digital supports this claim by referring to statements allegedly made by Mr. Kaveh Someah, a former vice president of the energy division of Ovivo. Digital alleges that Mr. Someah informed them that Ovivo's intention was to steal Digital's intellectual property and acted accordingly. However, Digital does not provide any testimony or declaration from Mr. Someah to support its claim. Digital contends that Mr. Someah would testify in support of these statements if subpoenaed and is being unduly influenced by an independent lawsuit being brought against him by Ovivo. Ovivo disputes these allegations, and contends that Mr. Someah denies making these statements. Attempting to determine whether these statements were actually made without more information would involve credibility determinations that would be inappropriate at this stage in these proceedings. Therefore, the Court will not consider these allegations when determining whether Digital has shown a likelihood of success of this claim.

As explained in detail above, Digital fails to show that WaterExpert is a "pirated copy" of DigitalMentor. Digital alleges that Ovivo stole DigitalMentor's "algorithm and process", but fails to fully explain what this algorithm is. Ovivo represents that WaterExpert does not make use of any content that may have been created by this algorithm, and was not developed using a copied version of this algorithm. To the extent that Digital argues that the algorithm is the connector between the initial input of data and an "action to perform a task based on the input and steps on how to perform the task," Digital fails to show that Ovivo copied this specific connector when it created WaterExpert. The products are not, as Digital alleges, identical in design, appearance and functionality, therefore, a comparison does not support Digital's arguments.

Digital's remaining support for its allegations consists of assumptions and

ORDER – 10

circumstantial evidence[3]. Digital argues first that the timeline of events leading to the introduction of WaterExpert supports its claims. Specifically, Digital contends that the alleged precursor to WaterExpert, Ovivo Connect, was a failure, and that it was only after the introduction of DigitalMentor that the "vision" for WaterExpert was presented and then developed. Digital points to, among other dates, Ovivo's introduction of Ovivo Connect in 2013, the beginning of Director of Digital Strategy and Marketing for Ovivo, David Williams' involvement with Ovivo Connect in May of 2013, Digital's presentation of DigitalMentor to Ovivo in March of 2014, Mr. Williams' promotion to Global Marketing Manager in October of 2014, the signing of the Master Agreement in August of 2015, Ovivo's hiring of Biztech Consultancy ("Biztech") to do programming work, and Mr. Williams' presentation of WaterExpert to Digital on December 8, 2016. Dkt. # 28; Dkt. # 58. Digital contends that this timeline of events reveals that after Ovivo Connect proved to be unsatisfactory in 2013, Mr. Williams met with Digital and decided to use DigitalMentor's technology and information to build a competing product. He then allegedly presented this "vision" to Ovivo and was promoted to Global Marketing Manager due in part to this plan[4]. Digital also contends that Ovivo then began to implement this plan by signing the Master Agreement and NDA in order to gain access to DigitalMentor. Digital contends that Ovivo did not hire Biztech until March 28, 2016, after Digital completed all orders with Ovivo and provided them with the requested revisions, or after Ovivo had "everything it need[ed] for WaterExpert." Dkt. # 28; Dkt. # 58.

While the timeline of events as alleged by Digital is consistent with its version of

---

[3] Digital cites to quotes from transcripts of meetings between Digital and Ovivo in both its Motion and Reply. However, these transcripts or audio were not provided to the Court. The Court declines to grant a preliminary injunction on the basis of evidence that is not properly supported.

[4] After review of the evidence submitted by the parties, several of the dates provided by Digital in its Reply are not substantiated by record. Therefore, to the extent that elements of Digital's suggested timeline are not supported, they will not be considered for purposes of this Motion.

ORDER – 11

events, the timeline is also consistent with Ovivo's version of events. Ovivo asserts that WaterExpert is a completely separate product from DigitalMentor that has been in development since 2012. According to Ovivo, Ovivo began its development of Ovivo Connect, in 2012. In 2013, Mr. Williams took over development and deployment of Ovivo Connect and presented a written proposal to expand the product. In October 2014, Mr. Williams is selected to become Global Marketing Manager allegedly due in part to his experience and vision for developing and maintaining Ovivo Connect. Dkt. # 28. In January of 2014, Ovivo contends that Mr. Williams developed a new prototype of Ovivo Connect that included many of the functions Digital alleges originated with DigitalMentor. However, unlike in Digital's version of events, Ovivo contends that it reached out to Biztech in January of 2015 to assist with programming features for Ovivo Connect. Ovivo further contends that in April of 2016, Ovivo expanded its retention of Biztech to include other development work. By September of 2016, before Ovivo's presentation to Digital, WaterExpert was ready for launch. Dkt. # 45. Therefore, a comparison of substantiated dates and both parties' version of the events leading to the development of WaterExpert does not specifically provide support for Digital's allegations. Digital's argument that the timeline of events reveals that Ovivo used Digital to gain access to their confidential information in order to copy DigitalMentor, falls flat.

Digital also argues that DigitalMentor's desirability as a product and Ovivo's actions and statements indicating a desire to purchase DigitalMentor are further support for its contention that Ovivo did not have a working product in development. However, Ovivo does not dispute that Ovivo Connect did not yet have all the functioning features that they wanted, that they were interested in Digital's content, and that DigitalMentor was needed at that time to fill a specific client need. Hearing Transcript at 30-31. Thus, Ovivo's desire to purchase DigitalMentor could plausibly have originated out of its need for a stop-gap until their own product could be completed and because of its admitted desire for Digital's content. The partnership between the parties and DigitalMentor's

ORDER – 12

desirability as a product do not provide support for Digital's statement of the case. Digital provides no other convincing arguments to support its theory that Ovivo breached the NDA by reverse engineering Digital's software or using Digital's confidential information. Therefore, Digital fails to show a likelihood of success of it breach of contract claim.

While a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, "when a plaintiff has failed to show the likelihood of success on the merits, [the Court] need not consider the remaining three elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotations omitted). While Digital brings several other claims in its Complaint, it makes no other arguments regarding the merits of these claims in its Motion for Preliminary Injunction. Therefore, the Court will not consider whether Digital has a likelihood of success on its remaining claims for the purposes of this Motion. As Digital has failed to show a likelihood of success or serious questions going to the merits of its claims, the Court need not consider the remaining three elements of the preliminary injunction analysis. Digital's Motion for Preliminary Injunction is **DENIED.**

### IV.   CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction and **LIFTS the temporary restraining order** currently in place. Dkt. # 38.

DATED this 21st day of February, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13