HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIGITAL MENTOR, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>OVIVO USA, LLC; OVIVO US<br>HOLDING INC.; VALERE<br>MORISSETTE; MARC BARBEAU;<br>DOES 1-20,<br><br>        Defendants. | Case No. C17-1935-RAJ<br><br>ORDER |

This matter comes before the Court on Defendants' Motions to Dismiss.  Dkt. ## 78, 79, 81.  Plaintiff Digital Mentor, Inc.'s ("Digital") opposes the Motions.  Dkt. ## 83, 85, 87.  Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendants' Motions to Dismiss.

## I.    BACKGROUND

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir.2002) (holding that in the context of a Rule 12(b)(2) motion for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its

ORDER – 1

favor).

On December 29, 2017, Digital filed a Complaint against Defendants, Ovivo USA, LLC, Ovivo US Holding, Inc., and Valere Morissette (collectively, "Ovivo"), seeking injunctive relief.  Dkt. # 1.  On January 16, 2018, Digital filed a Motion for a Temporary Restraining Order and Preliminary Injunction.  Dkt. # 11.  On January 24, 2018, the Court granted Digital's Motion for Temporary Restraining Order.  Dkt. # 35. Ovivo then filed motions to dismiss the Complaint.  Dkt. ## 64, 71, 73.  On February 21, 2018, the Court denied Digital's Motion for Preliminary Injunction and lifted the temporary restraining order.  Dkt. # 75.  Digital then filed a First Amended Complaint ("FAC").  Dkt. # 76.  Ovivo filed these Motions to Dismiss shortly after.  Dkt. ## 78, 79, 81.

Digital is an engineering consulting service that developed a mobile computing system, Digital Mentor, for the waste and wastewater industry to allow companies to monitor and maintain their equipment on mobile devices.  Dkt. # 76 at ¶ 1.  Digital is a Delaware corporation with its principal place of business in Nevada.  *Id*.  Defendant Ovivo USA, LLC provides equipment for water and wastewater treatment facilities throughout the United States and around the world.  *Id*. ¶ 2.  Defendant Ovivo US Holding Inc. is a Delaware corporation that owns Ovivo USA, LLC.  Dkt. # 76 at ¶ 3. Defendant Valere Morissette is Senior Vice President for Municipal Business of Ovivo USA, LLC.  *Id*. at ¶ 4.  Morissette resides and works in Utah.  Dkt. # 80 at ¶ 2.

In March of 2014, Digital marketed Digital Mentor to Ovivo for use in their facilities and in conjunction with the sale of their equipment.  Dkt. # 76 at ¶¶ 35, 36.  The parties then entered into a licensing agreement ("Master Agreement").  *Id*. at ¶¶ 37, 42. Pursuant to that licensing agreement, Digital agreed to create and license Digital Mentor for Ovivo's facilities and customers under the name "digitalOPS" and Ovivo granted Digital a non-exclusive limited license to Ovivo's Standard Operating Procedures ("SOP"), manuals, technical drawings, etc.  Dkt. # 78-1.  On or about November 1, 2014,

ORDER – 2

Digital and Ovivo entered into a Non-Disclosure Agreement ("NDA").  Dkt. # 76 ¶ 38. Digital claims that, while under these contracts, Defendants copied Digital Mentor and created a "pirated" version of this product called, WaterExpert.  *Id*. at ¶ 113.

Digital brings claims against Ovivo for: 1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1836, *et seq*.; 2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et seq*.; 3) trademark infringement; 4) copyright infringement; 5) violation of the Washington Uniform Trade Secrets Act ("UTSA"), RCW 19.108.010, *et seq*.; 6) violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq*.; 7) breach of contract; 8) tortious interference with business expectancy; 9) fraud; 10) breach of fiduciary duty; and 11) unjust enrichment.  Defendant Ovivo USA, LLC ("Ovivo USA") moves to dismiss Counts 1, 2, 4, 5, 6, 9, 10 and 11 for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. # 78.  Defendant Ovivo US Holding, Inc. ("Ovivo US Holding") and Defendant Valere Morissette ("Morissette") both separately move to dismiss the FAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and to join Ovivo USA's Motion.  Dkt. ## 79, 81.

## II.    LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Plaintiff has the burden of establishing personal jurisdiction.  *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss" *Id*.  The plaintiff cannot "simply rest" on the bare allegations of his or her complaint, and all "uncontroverted allegations" must be taken as true.  *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015).  Where there are conflicts between parties over statements

ORDER – 3

contained in affidavits, these conflicts must be resolved in the plaintiff's favor. *Id*.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." Shute v. Carnival Cruise Lines, 113 Wn. 2d 763, 771, 783 P.2d 78 (1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). Plaintiff asserts that Defendant Morissette and Defendant Ovivo US Holding are subject to both specific and general jurisdiction. A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction. *Id*. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted).

The court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The burden then shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

ORDER – 4

### B.  Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim.  The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III.   DISCUSSION

### A.  Personal Jurisdiction

#### 1.  *Morissette*

Digital alleges that Morissette is the Senior Vice President for Municipal Business and a corporate officer of Ovivo USA "who transacted business in the state of Washington."  Dkt. # 76 at ¶¶ 4, 12(c).  Digital alleges that Morissette is a "high level, decision-making executive" at Ovivo USA, and that he directed an Ovivo employee to use the allegedly infringing phrase "knowledge never lost," to promote WaterExpert.  *Id.* at ¶¶ 93, 104.  Digital further alleges that Morissette had knowledge of Ovivo USA's "intent to infringe," had the ability to "stop the infringement from occurring," and

participated in and/or ordered others to illegally copy Digital's product.  *Id*. at ¶ 114.

Morissette argues that the FAC fails to make any allegations that he has any contacts with Washington, much less the "systematic and continuous" contacts required for general jurisdiction. Dkt. # 79 at 5.  Digital argues that as a "decision maker and an integral part of Ovivo USA LLC's control group," Morissette is subject to personal jurisdiction as a "primary participant" in Ovivo USA's activities.  Digital bases this "primary participant" theory on two cases, *Calder v. Jones*, 465 U.S. 783 (1984), and *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985).  Neither case provides support for Digital's argument. Dkt. # 83 at 5.  Digital cites to *Transgo* to support their contention that personal jurisdiction is appropriate if an individual had control of, and direct participation in the alleged infringing activities.  However, the language cited by Digital has nothing to do with personal jurisdiction, but is rather a discussion of personal liability in the context of a civil conspiracy.  *Transgo, Inc.*, 768 F.2d at 1021.  There is no mention of the "primary participant theory" on which Digital's argument relies.

In *Calder*, the Supreme Court found that specific jurisdiction was proper where the "brunt of the harm" caused by the petitioners' conduct was suffered in the forum in question.  *Calder* does not indicate that general jurisdiction can be established through this "primary participant theory," only that in assessing the individual defendants' contacts with the forum State, *specific* jurisdiction was proper where their individual actions were intentionally directed toward a resident of that forum State.  *Calder*, 465 U.S. at 790.  Digital cites to no other legal authority to support its theory of general jurisdiction.  Morissette works and resides in Utah and Digital fails to sufficiently establish a *prima facie* case that Morissette's *individual* contacts with this District are substantial enough such that that general personal jurisdiction would be proper.

The Court will now consider whether the exercise of specific jurisdiction over Morissette is appropriate.  Digital argues that jurisdiction over Morissette is appropriate

ORDER – 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

because he had control of, and direct participation, in the alleged breach of contract and infringement described in the FAC.  Dkt. # 83 at 7.  As a Senior Vice President of Ovivo USA, Digital alleges that Morissette was "in charge of and supervised all of the individuals involved" in the infringement of Digital's intellectual property.  Dkt. # 76 at ¶ 103.  As noted above, Digital bears the burden of showing that Morissette purposefully directed his activities toward their chosen forum, or purposely availed himself of the privileges of conducting activities in the forum.  Digital's sole allegations in support of this prong of the test for specific jurisdiction that are individual to Morissette are, that he directed Elena Bailey to use an allegedly infringing phrase, had knowledge of the intent to infringe, had the ability to stop it, and participated in the infringement and/or ordered others to proceed with the infringement.  However, Digital does not allege that any of these activities were directed toward the State of Washington, or that Morissette purposely availed himself of the privilege of conducting business in the State of Washington through these activities.  Digital also does not allege that the "brunt of the harm" they suffered from Morissette's actions occurred in this forum.  At most, Digital alleges that Morissette has ties to Washington and "has had to conduct business relating to Washington" because his employer, Ovivo USA, has many ties to Washington.  These contacts are not individual to Morissette and are not sufficient to show that the Court's assertion of personal jurisdiction over him would comport with "traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Digital makes one remaining argument in favor of personal jurisdiction over Morissette: that the Court has jurisdiction over Morissette pursuant to the RICO statute.  Digital argues that nationwide service of process under RICO is appropriate in this case because Morissette has "sufficient minimum contacts with the United States," citing to *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986), in support of their contention.  In *Butcher's*, the Ninth

ORDER – 7

Circuit held that, "[f]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id*. at 539. Digital fails to show that all of these requirements have been met. As noted by Morissette, Digital fails to show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. Other than a conclusory statement, Digital provides no other explanation why they allege that this is the case. Further, Morissette resides and works in Utah, the State in which Ovivo USA and Ovivo US Holding have their principal places of business. Dkt. # 76 at ¶¶ 2-4; Dkt. # 82 at ¶ 2. Therefore, presumably, the State of Utah could have personal jurisdiction over all three Defendants.

Finally, Digital requests that if the Court finds that they have failed to make a showing of personal jurisdiction over Morissette, that ruling on this Motion be postponed to allow it to conduct jurisdictional discovery. Dkt. # 83 at 8. Digital argues that it would be an abuse of discretion to refuse to grant discovery on jurisdictional issues when more facts are needed, however, the Ninth Circuit has found that denial of a request for discovery that is "based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Digital has not shown that additional discovery will lead to facts to demonstrate a basis for jurisdiction and has not made sufficient factual allegations that suggest that jurisdiction exists. Digital does not identify what discovery they seek to conduct or the facts they hope to uncover. Therefore, Digital's request for jurisdictional discovery is **DENIED** and Morissette's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.** Dkt. # 79.

ORDER – 8

2.  *Ovivo US Holding*

Ovivo US Holding also moves to dismiss Digital's claims against them for lack of personal jurisdiction.  Digital alleges that Ovivo US Holding is the alter ego of Ovivo USA, and as such, is subject to the personal jurisdiction of this Court.  Digital further alleges that Ovivo US Holding and Ovivo USA failed to maintain separate bank accounts, file mandatory state and/or federal documents, and register as a foreign entity. Dkt. # 76 at ¶¶ 7, 8.  Digital makes no other factual allegations to support these statements, or its contention that Ovivo US Holding is the alter ego of Ovivo USA.

A parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent company for jurisdictional purposes.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).  There are two exceptions to that rule: 1) where the subsidiary is the parent company's alter ego, or 2) that failure to disregard their separate identities would result in fraud or injustice.  *Id.* "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* at 1134-35.

In its Response, Digital contends that Ovivo US Holding uses Ovivo USA as a "shield against liability," and that Ovivo US Holding and its "conglomerate corporations" have financial control over Ovivo USA.  Digital further contends that "[w]ithout Ovivo USA, Ovivo Holding would have to either perform the functions that Ovivo USA LLC does currently or acquire another entity to perform those functions."  Digital makes no factual allegations to support these contentions in the FAC other than a brief statement that Ovivo US Holding and Ovivo USA fail to observe corporate formalities and fail to maintain separate bank accounts.  Digital provides no further details or support for these statements.  Further, Ovivo US Holding contends that it does not direct or participate in

ORDER – 9

the day-to-day operations of Ovivo USA, and acts merely as a holding company. Dkt. # 82.  Digital provides no support for its allegation that there is a "unity of interest and ownership" between the two companies and makes no factual allegations supporting a finding that Ovivo US Holding has any contacts with the State of Washington.

In support of its argument that this Court has general jurisdiction over Ovivo US Holding, Digital references only Ovivo USA's contacts.  Ovivo US Holding is a Delaware corporation with its principal place of business in Utah. Dkt. # 82.  It has no property or assets in the State of Washington, and has received no profits from any business dealings in the State of Washington.  *Id.*  Digital also fails to support its contention that a failure to treat these two entities as one would result in fraud or injustice.  In fact, Digital makes no specific arguments in support of that contention.

Digital's arguments in support of a finding of specific jurisdiction over Ovivo US Holding are similarly minimal.  Dkt. # 85.  Digital contends that Ovivo US Holding purposely availed itself of the privilege of doing business in the State of Washington by promoting sales and activities here, however, Digital makes no factual allegations in support of this contention.  Digital provides no other arguments or evidence supporting a finding that Ovivo US Holding purposely directed its activities toward this forum or purposely availed itself of the privilege of conducting business here, instead arguing that Ovivo USA's contacts can be imputed to Ovivo US Holding because Ovivo USA is merely an agent of its parent company.  The Supreme Court has held that agency relationships "may be relevant to the existence of *specific* jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).  "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.*  However acceptance of this theory requires that Digital make factual allegations supporting a finding that Ovivo US Holding directed Ovivo USA to "take action" in Washington, or that it directs Ovivo USA in any way at all.  Digital does not dispute Ovivo US Holding's contention that it does not direct or participate in the day-to-day operations of Ovivo

ORDER – 10

USA, but instead alleges that Ovivo US Holding has "100% voting power over Ovivo USA, LLC." In support of this allegation, Digital cites to a document entitled, "Business Information." Dkt. # 85 Exh. A. This document does not contain any information regarding Ovivo US Holding, or its alleged voting power over Ovivo USA. It merely indicates that Morissette is one of five "Governors" of Ovivo USA. *Id.* The FAC contains no further allegations that Ovivo US Holding directs Ovivo USA to take any action in Washington.

Digital further argues that where a subsidiary is created by a parent company for tax or corporate finance purposes to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiary. Digital cites to *Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744, 745 (S.D.N.Y. 1980), in support of its argument. First, the Court notes that the decision in *Bellomo* is not binding, only persuasive. Second, Digital fails to make any factual allegations to support its contention that Ovivo US Holding created Ovivo USA to carry on business on its behalf, therefore, the holding is inapposite and unpersuasive. Digital fails to show that either general or specific jurisdiction over Ovivo US Holding would be appropriate in this case.

As in their Response to Morissette's Motion to Dismiss (Dkt. # 83) above, Digital argues that the Court has jurisdiction over Ovivo US Holding pursuant to the RICO statute, and also requests that the Court postpone ruling on this Motion to allow for jurisdictional discovery. Dkt. # 85 at 8-9. Digital makes the exact same arguments in this Motion as they did in the previous Motion. As stated in further detail above, the Court finds Digital's arguments to be unpersuasive. Digital fails to show that all of the requirements for nationwide service of process under RICO are appropriate in this case and fails to show that their request for discovery is based on "little more than a hunch that it might yield jurisdictionally relevant facts." For the same reasons stated in the Court's analysis above, Digital's request for jurisdictional discovery is **DENIED.** Ovivo US

ORDER – 11

Holding's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.** Dkt. # 81.

### B. Failure to State a Claim

*1. Defend Trade Secrets Act and Washington Uniform Trade Secrets Act*

As a preliminary matter, Ovivo argues that Digital's claims under the DTSA should be dismissed as time-barred because the alleged misappropriation occurred after the DTSA's date of enactment.  The DTSA applies to "any misappropriation of a trade secret (as defined in 18 U.S.C. § 1839) for which any act occurs on or after the date of enactment of this Act."  Defend Trade Secrets Act of 2016, PL 114-153, 130 Stat. 376. The date of enactment was May 11, 2016.  Digital does not dispute that the FAC alleges that Ovivo acquired the alleged trade secrets prior to May 11, 2016, but instead argues that Ovivo misappropriated Digital's trade secrets through use and disclosure after it acquired them.  Digital alleges that Ovivo engaged in misappropriation of its alleged trade secrets from early 2015 to the present, and specifically refers to a date in December of 2016 as one in which Ovivo engaged in "ongoing theft of Digital's ideas."  Dkt. # 76 at ¶¶ 56, 84.  Ovivo argues that this referenced misappropriation refers to the use or disclosure of the same information as the prior misappropriation, and does not qualify as a separate act under the DTSA.  While there is little legal authority to support either side of that argument, it is not necessary for the Court to opine on that at this time.  Digital does allege that Ovivo engaged in theft of its trade secrets in December of 2016, and whether Digital can prove that this misappropriation was either separate or continuing is not appropriately determined at this time.  For the purposes of a motion to dismiss, it is sufficient that Digital alleged that misappropriation occurred after May 11, 2016.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  A trade secret is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program

devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3)(A)(B).  "Misappropriation" includes both acquisition and disclosure of trade secrets.  18 U.S.C. §§ 1839(5)(A) & (B).  Similarly, the UTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  RCW 19.108.010.

In the February 21, 2018, Order denying Digital's Motion for Preliminary Injunction, the Court found that Digital failed to identify the trade secrets that they are seeking to protect.  Dkt. # 75.  Digital is correct that the standards for a motion to dismiss cannot be conflated with the standards for a motion for a preliminary injunction.  This does not absolve them from having to identify their alleged trade secrets with some specificity.  Digital spends much of its Response arguing that the fact that an alleged trade secret is comprised of elements that have been in the public domain or are well-known, does not in itself preclude it from being a trade secret.  The Court does not dispute that this is the case.  *See United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 314, 199 L. Ed. 2d 207 (2017) ("[A] trade secret may consist of a compilation of data, public sources or a combination of proprietary and

ORDER – 13

public sources."). However, that argument misses what is actually at issue here, which is whether, assuming the truth of the FAC's factual allegations and crediting all reasonable inferences arising from those allegations, Digital has sufficiently stated a claim for trade secret misappropriation. Part of sufficiently stating a claim for trade secret misappropriation is sufficiently identifying the alleged trade secrets and showing that they exist. *See MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 522 (9th Cir. 1993) ("A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."). Digital need not disclose its alleged trade secrets in such detail that it would result in public disclosure of those trade secrets, however, they must sufficiently identify those alleged trade secrets[1].

Digital points to several factual allegations in the FAC that they contend are descriptions of their trade secrets. Dkt. # 87 at 5; Dkt. # 76 at ¶¶ 29, 31, 33, 77. The majority of these allegations contain descriptions of what services their product, Digital Mentor, provides but does not identify what parts of these services are trade secrets. For example, Digital describes Digital Mentor as an offline "data collection system that intuitively leads the user to the necessary procedures using a graphical interface," but does not pinpoint what about this service constitutes a trade secret. Dkt. # 76 at ¶¶ 29, 33. Digital does not provide detail as to whether the data collection system itself, the actions of the data collection system, the graphical interface, or even if all of these factors together make up a possible trade secret. Digital further alleges that "various iterations of Digital Mentor; inside knowledge of novel designs of Digital Mentor; revolutionary processes; a detailed and comprehensive algorithm; modules developed for the mobile software computing platform; and other key information," are also trade secrets. Dkt. # 76 at ¶ 77. Digital fails to identify or describe what processes it claims are trade secrets,

---

[1] Digital argues that it should not be required to plead "all of its possible trade secrets" with specificity because Ovivo "knows what has been misappropriated." This argument is circular and requires the Court to conclude that Ovivo did, in fact, misappropriate trade secrets, a conclusion that is inappropriate at this stage in litigation. Dkt. # 87 at 6.

provide any explanation or detail as to what the "detailed and comprehensive algorithm" consists of, explain what type of modules they refer to or what they do, describe what "novel designs" they are referring to, or provide any additional factual allegations regarding the other "key information." Even assuming the truth of Digital's allegations, that these aspects of Digital Mentor are trade secrets, the description of these trade secrets are so vague that they are not identifiable. Ovivo's Motion to Dismiss Counts I and V is **GRANTED.**

   *3. RICO*

   The RICO Act, 18 U.S.C. § 1961 *et seq.*, makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs" through the commission of two or more statutorily defined crimes, or "a pattern of racketeering activity." 18 U.S.C. § 1962(c).  To establish liability under this provision, the plaintiff must allege and prove the existence of two entities: 1) a person; and 2) and enterprise. These entities must be distinct. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001). An enterprise under RICO is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "associated-in-fact enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

   Digital alleges that Ovivo, along with Ovivo USA employees, comprise an enterprise as defined by § 1961. Dkt. # 76 at ¶ 92. For purposes of a RICO claim, a corporation and its employees are not legally identical, whether the employees are unlawfully conducting the affairs of their corporation within the scope of their employment, or not. *See Cedric*, 533 U.S. at 166. Ovivo argues that Digital's RICO claim fails because it the FAC does not contain any allegations linking Ovivo USA to an enterprise. However, a different reading of the FAC shows that Digital refers to both a

ORDER – 15

"person," Ovivo USA, and an "associated-in-fact enterprise," the Ovivo USA employees.

An "associated-in-fact enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish the existence of such an enterprise, a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). Digital names "theft of trade secrets and criminal infringement of copyright" as the alleged racketeering activities, but fails to make any allegations connecting the members of the enterprise to the alleged "multiple acts of racketeering." *Id.* at ¶¶ 91, 96. While Digital alleges that Ovivo USA engaged in these alleged acts of racketeering, and that an individual employee named in the enterprise benefited from the activities, they do not allege that the members of the enterprise actually engaged in a pattern of racketeering.

In their Response, Digital points to several allegations in the FAC that they contend name specific employees involved in the racketeering activities and the specific actions of some of these employees. *See* Dkt. # 87 at 11; Dkt. # 76 at ¶¶ 56, 63, 68, 92, 93. While these allegations do name specific employees and attribute actions to some of these employees, they do not connect the employees to the specific racketeering activities named in the FAC. For example, Digital alleges that David Williams, an Ovivo USA employee, induced Digital to divulge information about its development of Digital Mentor, and that these questions "demonstrate the ongoing theft of Digital's ideas." However, Digital does not allege that David Williams engaged in theft of Digital's trade secrets, only that Williams asked questions about Digital Mentor in a meeting. Digital also points to their allegation that Ovivo USA and the named Ovivo USA employees "set out, under false pretenses, to entice Digital into disclosing its intellectual property," as support for their claim that Defendants "had the common purpose of defrauding Plaintiff to harm its competitive position." Dkt. # 87 at 9-10; Dkt. # 76 at ¶ 75. This allegation is

ORDER – 16

insufficient to support the existence of an associated-in-fact enterprise because Digital specifically states that fraud is not alleged for this claim, and because the allegation does not indicate that the association engaged the other named acts of racketeering, only that they set out to induce Digital to disclose its intellectual property.  Dkt. # 87 at 11.

As Digital fails to make sufficient factual allegations supporting a finding of the existence of an associated-in-fact enterprise, or that this enterprise functioned together as a unit to engage in a pattern of racketeering activities, Ovivo's Motion to Dismiss Count II of the FAC is **GRANTED.**

### 4.   *Copyright Infringement Claim*

Similar to Ovivo's arguments regarding Digital's trade secret misappropriation claims, Ovivo argues that the FAC fails to state a claim for copyright infringement because Digital fails to identify what copyrights Ovivo allegedly infringed.  "[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); 17 U.S.C. § 501(a).  In order to bring a copyright infringement claim, there must be registration of a copyright. 15 U.S.C. § 411(a).  "[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010).  Digital alleges that it owns a valid copyright in "the Digital Mentor designed, developed and created for Ovivo USA," and that it filed its applications for copyright registration with the U.S. Copyright Office between October 23, 2017 and November 13, 2017.  Dkt. # 76 at ¶¶ 108, 109.  Digital describes Digital Mentor as a "revolutionary and proprietary process that synthesizes information systems relating to the operations, maintenance, and troubleshooting of assets and equipment for the wastewater treatment equipment industry, manifested in tangible expression of a mobile software computing platform, modules, and detailed and comprehensive algorithm." *Id*. at ¶ 107.

ORDER – 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ovivo argues that because Digital has provided no information as to what their copyright applications are seeking to protect, it has not adequately alleged that it has any protectable copyrights. Ovivo bases this argument on the fact that Digital has not provided them with the relevant copyright applications and because Digital has not sufficiently described their contents so as to provide Ovivo with what expressions that Digital is seeking to protect. Dkt. # 78 at 15. Digital contends in its response that Digital Mentor's "revolutionary and proprietary process," manifested in a "mobile software computing platform, modules, and detailed and comprehensive algorithm," is the subject of its copyright claims. Dkt. # 87 at 11. Whether Digital has provided Ovivo and the Court with its copyright applications is not a determinant as to whether Digital has successfully alleged a claim for copyright infringement for purposes of a motion to dismiss. Digital need only to point to factual allegations that state a claim to relief that is plausible on its face. At this stage in litigation, Digital's allegation that Digital Mentor's "mobile software computing platform, modules, and detailed and comprehensive algorithm," is protected by copyright is sufficient to at least put Ovivo on notice as to Digital's copyright claim.

Digital alleges that Ovivo violated Digital's copyrights when they "copied and/or ordered the copying of all or portions of the original Digital Mentor," and used Digital Mentor or portions of Digital Mentor, to create Ovivo's product, WaterExpert. Dkt. # 76 at ¶ 113. "Because direct evidence of copying is not available in most cases, plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). "Where a high degree of access is shown, we require a lower standard of proof of substantial similarity." *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). "In determining whether two works are substantially similar, [the Ninth Circuit] employ[s] a two-part analysis: an objective extrinsic test and a subjective intrinsic test." *Swirsky*,

ORDER – 18

376 F.3d at 845 (9th Cir. 2004).  The extrinsic test "considers whether two works share a similarity of ideas and expression based on external, objective criteria." *Smith*, 84 F.3d at 1218.  If the plaintiff satisfies the extrinsic test, then the intrinsic test asks whether an "ordinary, reasonable observer" would find a substantial similarity of expression of the shared idea. *Id.*

The parties do not dispute that Ovivo had access to Digital's product.  At issue is whether Digital has sufficiently alleged that Ovivo's product is "substantially similar" to Digital Mentor.  The Court will not opine as to whether WaterExpert uses the same "detailed and comprehensive algorithm" as Digital Mentor.  As noted in its previous Order, this cannot be determined because Digital fails to explain exactly what this algorithm is.  Assuming that the algorithm "synthesizes information systems relating to the operations, maintenance, and troubleshooting of assets and equipment for the wastewater treatment equipment industry," as alleged in the FAC, this description is too general to determine what the algorithm does or if the operation of Digital Mentor as a result of this algorithm is substantially similar to the operation of WaterExpert. However, Digital need not prove the existence of this algorithm at this stage in litigation. For the purposes of this Motion, Digital need only allege that WaterExpert is substantially similar to Digital Mentor.

Digital alleges that: WaterExpert's flow of information is identical to Digital Mentor's; its graphical platform looks similar to Digital Mentor's; it uses "radio buttons" just as Digital Mentor does; it accesses the same type of information that Digital Mentor accesses; and the core systems of the two products are identical.  Dkt. # 76 at ¶ 71. Assuming the truth of these allegations, the FAC sufficiently alleges that WaterExpert and Digital Mentor share a "similarity of ideas and expression."  Digital alleges that WaterExpert's flow of information, access to information, and core system is the same as Digital Mentor's.  This includes access to operations and maintenance manuals, procedures, multimedia content and troubleshooting; all things that Digital claims that it

ORDER – 19

1

2   has a copyright to.  Digital further alleges that Digital Mentor's platform looks similar,

3   utilizes similar tools, and has the same core system as WaterExpert.  These allegations

4   support an inference that an "ordinary, reasonable observer" would find a substantial

5   similarity of expression of the shared idea.  Whether Digital can prove these allegations

6   remains to be seen, however, for purposes of this Motion, the FAC sufficiently states a

7   claim for copyright infringement.  Ovivo's Motion to Dismiss Count IV of the FAC is

8   **DENIED.**

            *5.  Washington Consumer Protection Act*

9           Digital alleges that Ovivo engaged in fraud, copyright infringement,

10  misappropriation of trade secrets, and breached contracts in violation of the CPA.  Ovivo

11  argues that Digital's CPA claim is preempted by the UTSA because it is predicated on

12  the same operative alleged fact, that Ovivo misused Digital's confidential and proprietary

13  information.  Dkt. # 78 at 19.  The UTSA "displaces conflicting tort, restitutionary, and

14  other law of [Washington] state pertaining to civil liability for misappropriation of a trade

15  secret." RCW 19.108.900(1). The UTSA does not, however, affect contractual or other

16  civil liability or relief that is not based upon misappropriation of a trade secret. RCW

17  19.108.900(2)(a).  Washington courts have interpreted these provisions of the UTSA to

18  mean that a plaintiff "may not rely on acts that constitute trade secret misappropriation to

19  support other causes of action." *Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL

20  1857143, at *6 (W.D. Wash. May 21, 2012); *Thola v. Henschell*, 140 Wash. App. 70, 82,

21  164 P.3d 524, 530 (2007).  To determine whether the UTSA preempts a common law

22  claim, the court must "(1) assess the facts that support the plaintiff's civil claim; (2) ask

23  whether those facts are the same as those that support the plaintiff's UTSA claim; and (3)

24  hold that the UTSA preempts liability on the civil claim unless the common law claim is

25  factually independent from the UTSA claim."  *Id*.

26          Digital concedes in the FAC that their CPA claim is simply an alternative to their

27  UTSA claim, but argue that their CPA claim is not preempted because it is also based on

28  ORDER – 20

claims for fraud, copyright infringement, and breach of contract in addition to trade secret misappropriation.  Dkt. # 76 at ¶ 127; Dkt. # 87 at 15.  Preemption by UTSA of a common law claim is not just limited to claims of trade secret misappropriation.  *See Thola*, 140 Wash. App. at 82.  The test for preemption asks whether the facts that support the plaintiff's UTSA claim are the same facts that support the common law claim.  In order to prevail on a private CPA claim, a plaintiff must establish five distinct elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation.  *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37, 204 P.3d 885, 889 (2009).

First, CPA claims premised on copyright infringement are pre-empted by the Copyright Act.  *See Blue Nile, Inc. v. Ice.com, Inc*., 478 F. Supp. 2d 1240, 1247 (W.D. Wash. 2007) ("A claim is preempted if: (1) the work at issue comes within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under the state law are equivalent to the rights contained in 17 U.S.C. § 106.").  Second, the basis of the remaining underlying unfair or deceptive acts is Ovivo's alleged theft of "confidential and proprietary information to create its own 'pirated' version," of Digital Mentor.  Dkt. # 76 at ¶ 129.  More specifically, Digital alleges that Ovivo employees "enticed" Digital employees into revealing details about Digital Mentor in order to defraud Digital and steal their intellectual property to create WaterExpert.  Dkt. # 76 at ¶ 75.  This stolen intellectual property is also the basis for Digital's breach of contract claim.  As all of the alleged unfair or deceptive acts are supported by the same set of operative facts, Digital's CPA claim is not factually independent from their UTSA claim, and their CPA claim is preempted.  Ovivo's Motion to Dismiss Count VI of the FAC is **GRANTED.**

ORDER – 21

6. *Fraud*

Fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018), *cert. denied*, No. 18-304, 2018 WL 4350853 (U.S. Dec. 10, 2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); Fed. R. Civ. P. 9(b). Rule 9(b) requires that the plaintiff, "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson,* 889 F.3d at 964 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). While Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge, "this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Under Washington law, a claim for fraud must include: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Adams v. King Cty.*, 164 Wash. 2d 640, 662, 192 P.3d 891, 902 (2008).

Ovivo argues that Digital fails to adequately allege falsity and intent, and that Digital's fraud claim does not meet the heightened pleading standards of Rule 9(b). Review of the FAC shows that Digital has adequately alleged falsity. Digital alleges that named Ovivo USA employees told Digital that Ovivo wanted to create a partnership with Digital, promised to order and license Digital Mentor for their equipment, and promised to follow the restrictions in the NDA. Dkt. # 76 at ¶ 151. Digital further alleges that on or around December 8, 2016, Ovivo USA employees represented that Ovivo did not

ORDER – 22

intend to "compete with Digital Mentor's technology," and "was not in the mobile computing system business." *Id*. at ¶¶ 152, 153. Digital alleges that the above representations and statements were false. While Digital does not specifically allege why they believe these representations to be false, Digital does allege that Ovivo USA did in fact "get into the mobile computing system business" and built a product that is in competition with Digital Mentor. Digital has repeatedly claimed that Ovivo USA used its partnership with Digital as a ruse to steal their intellectual property and "reverse-engineer" Digital Mentor, a theory that supports Digital's allegation that Ovivo USA had no intention of following the NDA, and falsely represented that they would do so.

The FAC also alleges that Ovivo USA made these false statements in order to induce Digital into revealing its trade secrets to allow Ovivo USA to copy them and use them to develop WaterExpert, and that Digital relied on these statements when they revealed confidential and proprietary information to Ovivo USA. As Digital's theory is that Ovivo USA entered into a partnership and licensing agreement with Digital with the intent to use the information shared as a result of that agreement to develop their own competing product, they have sufficiently alleged that Ovivo USA intended Digital to believe that the partnership was real, that they had no intention of violating the NDA, and that they had no interest in developing a product similar to Digital Mentor. Digital has also sufficiently alleged that Ovivo USA knowingly made these allegedly false statements in order to get that information. Ovivo's Motion to Dismiss Count IX of the FAC is **DENIED.**

### 7. *Breach of Fiduciary Duty*

Digital contends that Ovivo USA owed Digital a fiduciary duty because a joint venture was formed when they entered into the NDA, and partners in a joint venture owe each other fiduciary duties. Dkt. # 76 at ¶ 162. To state a claim for breach of fiduciary duty, a plaintiff must establish: (1) the existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach proximately caused the injury. *Miller*

*v. United States Bank, N.A.*, 72 Wash.App. 416, 426, 865 P.2d 536 (1994).  Under Washington law, a joint venture must involve: "(1) a contract, express or implied; (2) a common purpose; (3) a community of interest; and (4) an equal right to a voice and to control."  Penick v. Employment Sec. Dep't, 82 Wash. App. 30, 40, 917 P.2d 136, 143 (1996).  Other than the existence of a contract, Digital does not sufficiently allege that any of the elements of a joint venture were present in the parties' business relationship. Digital does not allege that the parties had a common purpose, a community of interest, or an "equal right to a voice and to control."  Digital makes a conclusory statement that Ovivo represented to Digital in "various documents" that it wished to "move forward with Digital" in a joint venture capacity, but makes no factual allegations to support this statement.

Ovivo further argues that the Master Agreement, which states that it must be read together with the NDA, and that it supersedes all prior understandings between the parties, specifically states that "nothing in this Agreement, express or implied, is intended to or shall . . . constitute the Parties hereto employers, partners, or participants in a joint venture." Dkt. # 78-1.  Digital provides no argument in response to Ovivo's contention that the parties expressed a clear intent not to enter into a joint venture in the contract between them.  Therefore, Ovivo's Motion to Dismiss Count X of the FAC is **GRANTED.**

### 8. *Unjust Enrichment*

To establish unjust enrichment, Digital must show that: (1) one party conferred a benefit to the other; (2) the party receiving the benefit had knowledge of that benefit; and (3) the party receiving the benefit accepted or retained the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009).  "Unjust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship to each other." *McKesson HBOC, Inc. v. New*

ORDER – 24

*York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003).  Regardless of whether Digital brings their unjust enrichment claim "in alternative to the contractual remedies sought [in the FAC]," this does not change the fact that a contract exists between the parties.  "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."  *Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258, 1262 (2008).

    Digital does not dispute that there is an express contract between the parties, arguing instead that their other claims may provide a basis for their unjust enrichment claim.  Dkt. # 87 at 18.  The Court notes first that Digital has not adequately pleaded these claims as the basis for their unjust enrichment claim.  While Digital mentions that Ovivo USA entered into an NDA and a joint venture with Digital, they fail to sufficiently allege a connection between Ovivo USA's other alleged misconduct, i.e. copyright infringement or racketeering activity, and the alleged unjustly received benefits.  To the extent that Digital argues that the claims that do not originate from their contractual rights can provide a basis for their unjust enrichment claim, only an extremely liberal reading of the allegations FAC would support even a slight inference that Digital is basing their claim on trade secret misappropriation or copyright infringement.  Therefore, Ovivo's Motion to Dismiss Count XI of the FAC is **GRANTED.**

    //
    //
    //
    //
    //

ORDER – 25

IV.    **CONCLUSION**

Based on the foregoing, the Court **DENIES** Digital's request for jurisdictional discovery and **GRANTS** Morissette's and Ovivo US Holding's Motions to Dismiss for lack of personal jurisdiction.  Dkt. ## 79, 81.  Ovivo's Motion to Dismiss Counts I, II, V, VI, X and XI is **GRANTED.**  Dkt. # 78.  Counts I, II, V, VI, X and XI are dismissed without prejudice.  Ovivo's Motion to Dismiss Counts IV and IX is **DENIED.**  Dkt. # 78.

DATED this 21st day of December, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER – 26